IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,    )
    )
    Plaintiff,    )
    )
    vs.    )  CRIMINAL NO.   16-30041-MJR
    )
ANDREW C. TILLMAN,    )
    )
    Defendant.    )

## GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTIONS TO SUPPRESS

Comes now the United States of America and responds to Defendant's First Motion to Suppress Evidence and Statements (R. 29), and to Defendant's First Motion to Suppress Statements (R. 32) as follows:

### 1. Facts

The Government anticipates that at a hearing on this matter, the Government would establish the following facts through the sworn testimony of Belleville, Illinois police detective Jeffrey Jensen and St. Clair County Sheriff's Department Investigator Shane Brown:

Det. Jensen will testify that he arrested the Defendant, and that he wrote the Basic Case Report, Belleville P.D. Report #2015:08900, detailing the circumstances of Tillman's arrest.[1]

### A. Traffic Violations

Det. Jensen will testify that on December 14, 2015 at 9:59 p.m., he and his partner Det. Hackleman observed a Grey 2000 Chevrolet Tahoe, bearing Illinois license plate number Y973158, swerve sharply at an intersection in Belleville, nearly striking the street curb.

Det. Jensen and his partner then attempted to curb the suspect vehicle. However, the

---

[1] The narrative section of Belleville P.D. Report #2015:08900, i.e., pp. 3-4, is appended hereto at Attachment #1. All the reports cited herein were delivered to the Defendant as part of the discovery materials provided by the Government.

vehicle accelerated and attempted to elude police.  During the course of the subsequent chase, the driver of the suspect vehicle committed the traffic offenses of speeding, and of ignoring several traffic control devices.[2]  The suspect vehicle also deactivated its headlights while police were in pursuit.

The pursuing police officers then briefly lost visual contact with the suspect vehicle. However, police soon found the vehicle again, parked in the rear of a residence at 318 Lebanon Avenue in Belleville.  Police recognized the suspect vehicle both from its exact matching description, and from the license plate number they had previously noted.

### B.  Tillman's Detention and Arrest

Standing alongside the now-parked and locked suspect vehicle, police saw the Defendant Andrew C. Tillman.

From previous contacts, Detective Jensen will testify that *he knew Tillman to be a convicted felon.*

Tillman smelled of marijuana, and police also saw marijuana clinging to the black tee shirt which Tillman was wearing.  Tillman admitted that, "I got a little weed in my pocket," and police found and seized it.

Based on these facts, Det. Jensen arrested Tillman, and he then called for a K-9 unit to do an "open air sniff" of Tillman's vehicle.

### C.  The Firearm in Tillman's Car

*Before the K-9 unit arrived*, however, Det. Hackleman looked into Tillman's vehicle through the driver-side window, and he observed a semi-automatic handgun in plain view, with

---

[2] Three of the traffic citations issued to Tillman are appended hereto at Attachment #2.

the barrel protruding out from underneath the driver's seat.[3]

Police then opened the driver's side door of Tillman's vehicle and removed the handgun from underneath the car seat.  The firearm proved to be a loaded .45 caliber semi-automatic, which had been reported stolen.

### D.  The K-9 Alert

About 5-10 minutes after police removed the firearm from Tillman's car, the K-9 unit arrived.  The K-9 alerted for the presence of narcotics at both the front and back of Tillman's vehicle.

### E.  Contraband In the Car

Inside the suspect vehicle, police found 2 bags of methamphetamine (82 grams); 1 bag of cocaine (.5 grams); and over 2 KG (2253 grams) of marijuana.

### F.  Defendant's Statements to Police At The Scene of His Arrest

As previously stated, Defendant originally admitted that, "I got a little weed in my pocket."

Defendant also stated spontaneously, "You can't search *my* truck!"

### G.  Defendant's Custodial Interview

On December 15, 2015 at 10:15 a.m., about twelve hours after his arrest, St. Clair County Sheriff's Department Investigator Shane Brown and DEA TFO Joshua Hunt conducted a video and audio recorded interview with Tillman at the St. Clair County Jail.[4]

Prior to being advised of his *Miranda* rights, Tillman made several unsolicited statements:

> i.      "When you do something wrong, you have to be held accountable for what

---

[3] Photos of the handgun in question, protruding from underneath the driver's seat, are appended hereto as Attachment #3.

[4] The Sheriff's Department Report of Interview in Case #2015-2040-00036 is appended at Attachment #4.

you do."

ii.      "I was wrong."

iii.     "I wasn't trying to run from police."

After being advised of his *Miranda* rights, Tillman stated that:

i.      "I want a deal before I talk."

ii.     "I'm a gangster," and "I don't give a fuck where I go to do my time."

Tillman terminated the recorded interview after approximately twelve minutes.

## 2.  Legal Analysis

### A.      The Search of the Vehicle

#### i.      The Handgun

Det. Jensen will testify that he recognized Tillman as a convicted felon as soon as he saw him.  Within a minute or two after detaining Tillman for possession of marijuana, eluding police, and multiple moving traffic violations, Det. Jensen's partner saw in plain view the barrel of a handgun sticking out from underneath the driver's seat of the suspect vehicle.

Therefore, on these facts, police had probable cause to believe that Tillman had committed the felony offense of "felon in possession of a firearm," and evidence essential to proving that crime was in plain view inside the suspect vehicle.

Accordingly, police had every right to search the suspect vehicle, and the Government submits that this Court could and should deny Defendant's motions to suppress evidence on this basis alone.  No further inquiry is necessary.  *Thorton v. United States*, 541 U.S. 615, 124 S. Ct. 2127, 158 L.Ed.2d 905 (2004) (police can search the inside of a car in the course of arresting a suspect who is standing outside the car); *California v. Acevedo*, 500 U.S. 565, 111 S.Ct. 1982, 114 L.Ed.2d 619 (1991) (following a valid arrest of automobile occupant, police may search the

passenger compartment without a warrant); *Arizona v. Gant*, 538 U.S. 510, 123 S.Ct. 1708, 173 L.Ed.2d 485 (2009) (search of car incident to arrest only justified if passenger compartment within grab area of defendant *or, as stated in Concurrence, officers have probable cause to suspect evidence of crime of arrest will be found in car).*  (Emphasis added).

### ii.   The K-9 Sniff

Even if police had *not* had probable cause to search the suspect vehicle because of the firearm in plain view, police soon had probable cause to search the suspect vehicle anyway, due to the subsequent K-9 alert for the presence of controlled substances within the car.  Det. Jensen will testify that the K-9 alerted on the suspect vehicle within "approximately 5-10 minutes" after Tillman was first detained.

It is of course true that police may not extend an otherwise-completed traffic stop, *absent reasonable suspicion*, in order to conduct a dog sniff.  *Rodriquez v. U.S.*, 135 S.Ct. 1609, 1616 (2015).

In Tillman's case, the Government submits that the Belleville police had reasonable suspicion to believe that drugs might be found in the suspect vehicle, based on these facts known to police before the K-9 unit arrived:

1) Tillman had tried to elude police prior to the traffic stop – he turned the car's headlights off; ignored traffic signals; and exceeded the speed limit;

2) Tillman then parked the suspect vehicle; stepped out of the car, and locked the car behind him before police could even approach him;

3) Tillman smelled of marijuana;

4) Police observed marijuana on Tillman's tee shirt;

5) Tillman admitted that he "had a little weed";

6) Police found marijuana in Tillman's tee shirt pocket; and

7)  Police knew that Tillman was a convicted felon.

See *U.S. v. Sanford*, 806 F.3d 954, 957-9 (7th Cir. 2015) (Police conducting a traffic stop developed reasonable suspicion justifying a dog sniff, based on criminal history checks, even without direct evidence regarding drugs in or near the stopped vehicle.  An elapsed time of 26-27 minutes was therefore justified.)  Also, *U.S. v. Gruidry*, 817 F.3d 997, 1005 (7th Cir. 2016). (Following a traffic stop, police developed reasonable suspicion based on faint odor of marijuana, a previous stop when the Defendant had smelled of marijuana, and information from detective bureau that Defendant had been a drug user and dealer).

### B.  The Defendant's Statements at the Scene of His Arrest

Tillman first argues that all such statements must be suppressed because they were the product of an illegal, custodial interrogation.

At the scene of Tillman's eventual arrest, Det. Jensen will testify that police smelled and saw marijuana on Tillman's clothing, *before* any questions were asked.  Based on the plain view evidence of Tillman's drug possession, the Government submits that police were justified in questioning Tillman, for their own protection, as to whether or not he had any *other* potentially hazardous drug paraphernalia or drugs on his person, in addition to the marijuana.  That is precisely what the police did.

### C.  The Defendant's Post-Miranda Statements to Police at the St. Clair County Jail

The day after his arrest, police conducted a 12-minute recorded interview with the Defendant.  Before police could read Tillman his *Miranda* rights, Tillman made spontaneous (albeit ambiguous) statements that he "knew he had done wrong."  A Defendant who chooses to volunteer information *sua sponte* does so at his own risk.  Thereafter, police advised Defendant of his *Miranda* rights, and Tillman chose to ignore those warnings, stating, "I aint talking until I

6

get a deal."  At that point Tillman terminated the interview.  The Government submits that there

was nothing improper or extraordinary about the brief post-*Miranda* interview of Tillman.  Nor,

as the Government has explained *supra*, was the Defendant ever subjected to an illegal search of

his vehicle.    Therefore, Defendant's  post-arrest,  post-*Miranda*  statements  cannot  be  fairly

characterized as "fruit of the poisonous tree," i.e., the product of an unlawful detention or search.

### 3.   Conclusion

For all the reasons stated herein, Defendant's Motions to Suppress should be denied.


Respectfully submitted,

DONALD S. BOYCE
United States Attorney


*s/  Robert L. Garrison*
ROBERT L. GARRISON
Assistant United States Attorney
Nine Executive Drive
Fairview Heights, IL  62208
Phone:  (618) 628-3700
E-mail:   Robert.L.Garrison@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

UNITED STATES OF AMERICA,            )
                                     )
                    Plaintiff,       )
                                     )
           vs.                       )   CRIMINAL NO.   16-30041-MJR
                                     )
ANDREW C. TILLMAN,                   )
                                     )
                    Defendant.       )

**Certificate of Service**

I hereby certify that on August 15, 2016, I caused to be electronically filed

**Government's Response To Defendant's Motions To Suppress** with the Clerk of Court using

the CM/ECF system which will send notification to the following participant:

Adam D. Fein

                              Respectfully submitted,

                              DONALD S. BOYCE
                              United States Attorney


                              *s/  Robert L. Garrison*
                              ROBERT L. GARRISON
                              Assistant United States Attorney
                              Nine Executive Drive
                              Fairview Heights, IL  62208
                              Phone:  (618) 628-3700
                              E-mail:   Robert.L.Garrison@usdoj.gov